[Crim. No. 2378. Second Appellate District, Division One.—July 5, 1933.]

THE PEOPLE, Respondent, v. GEORGE W. MASTERS, Appellant.

Ralph D. Paonessa and Alexander L. Oster for Appellant.

U. S. Webb, Attorney-General, and Alberta Belford, Deputy Attorney-General, for Respondent.

DESMOND, J., *pro tem.*—The defendant, convicted by a jury of first degree burglary, seeks a reversal on the grounds of insufficiency of the evidence, refusal of the court to give one of his requested instructions and the admission of certain evidence hereinafter mentioned in some detail. The appeal is also from the order of the trial court denying a new trial.

The complaining witness, one Anderson, had a room upon the sixth floor of a hotel in Los Angeles. Shortly after midnight of February 2, 1933, he went to bed, leaving his

trousers on a chair in his room. In a pocket of his trousers was a single-fold wallet containing a $10 bill, a $5 bill and a check. The bills were folded once. The house officer of this hotel, one Brophy, testified as follows: While he was making his rounds at 5:50 A. M. February 3d, he saw the defendant in his stocking feet back out of Anderson's room and slowly and quietly close the door; that at this time witness was only eight or ten feet away from the defendant, who then passed within a foot of him and bounded up two flights of stairs, the officer pursuing, but failing to see him in the hallway when he reached the eighth floor, hearing one of the doors in that hall shut just before he reached the top of the stairs. Brophy then went back to the sixth floor, entered Anderson's room and awakened him. Anderson found that his wallet was gone. Brophy then returned to the eighth floor, summoned the elevator operator and the two went to the defendant's room on that floor and knocked for admittance. Before the knock was answered both these witnesses, according to their testimony, heard the toilet in defendant's room flushed several times. Brophy searched the defendant upon entering his room and in his side trousers pocket found a $10 bill and a $5 bill folded once. Mr. Morey, the manager of the hotel, was summoned to the room, and later Brophy went down to the sixth floor, where Anderson had remained meanwhile, and then both of them went back to the defendant's room at about 6:20 A. M., according to Anderson. Two police officers entered shortly afterward and the defendant was searched again by one of them, who found $23 in bills in defendant's watch pocket near the belt strap of his trousers. In the water at the bottom of the toilet in defendant's bathroom, Brophy found two keys of unusual make, characterized by one of the officers as "picks". No wallet was found upon the person of the defendant, but one of the officers, going to a window in defendant's room, focused a powerful flashlight on the roof of a garage building about thirty feet below defendant's bedroom window, and there saw an object which later proved to be Anderson's wallet. The other officer went down to the third floor of the hotel and there gaining access to the garage roof from a window directly below the window of defendant's room, picked up the wallet, and, on a second trip, the check which belonged to Anderson and which had

been in his wallet when he went to bed. Other officers were called in and one of them, Jones, handcuffed the defendant, took him to Anderson's room and in the presence of defendant, using the "picks" which Brophy had found, succeeded in opening Anderson's door, although it was locked at the time with the room-key. Anderson testified that he had locked his door upon retiring.

The defendant testified that he had gone to bed in his room between 9:30 and 10:30 P. M. of February 2d, and had never been out of his room up to the time Brophy knocked upon his door shortly before 6 A. M. the following morning, which defendant estimated was about forty-five minutes after he arose and dressed. He was fully dressed at the time he admitted Brophy.

 It is not contended that upon the facts above related the evidence is insufficient to support a verdict of burglary, but appellant argues that there was no evidence placed before the jury upon which they could base a verdict of first degree burglary, and suggests that this court has power under section 1181, subdivision 6 of the Penal Code, if satisfied that the evidence was sufficient to fix the crime of burglary upon the defendant, to modify the judgment in such manner as to establish the offense as second degree burglary. The question on this point then resolves itself into this: Was there evidence upon which the jury could find beyond a reasonable doubt that Anderson's room was entered before sunrise? This is a question of fact and having in mind that the offense, according to the testimony, was committed early in February at 5:50 in the morning, and that when Anderson went to the defendant's room at about 6:20 it was necessary for the officer, in order to survey the roof of the adjoining garage building, to use a flashlight, we see no reason to disturb the finding of the jury upon that point. Neither did the trial court, empowered as it was, to take judicial notice of the exact minute when the sun rose on February 3, 1933. (10 Cal. Jur. 720; *People* v. *Mayes,* 113 Cal. 618, 625 [45 Pac. 860].)

 Appellant predicates error upon the court's refusal to give the following instruction, as copied from the record: "Defendant's Instruction No. 2. The court instructs the jury that I need hardly say to you that an effective alibi is a perfect defense and that all effort to make it effective is

entitled to the same serious and earnest consideration upon the evidence that you are expected to give to any other material element of the case involved. The defense of an alibi stands upon the same footing as any other defense which the law recognizes as a legitimate one, and it may be and often is the first and only refuge of the innocent. Refused— covered Hahn.'' If for no other reason, the proposed instruction was properly refused because of the apparent fact that in effect its language constitutes an argument combined with an erroneous statement of the law. We cannot agree with the statement that ''the defense of an alibi stands upon the same footing as any other defense''. One difference was noted by this court in *People* v. *Vasquez,* 93 Cal. App. 448 [269 Pac. 549, 550], where at page 452, the degree of proof required to establish insanity as a valid defense is contrasted with the proof which, in connection with a claimed alibi, is sufficient to secure an acquittal. We observe the word ''covered'' in the notation upon this instruction and it may be that the trial court was under the impression that another instruction upon the specific subject of alibi had been given. We also observe that among the instructions given were several marked merely ''Refused'' and several marked ''Refused—covered.'' Possibly through inadvertence or mistake the word ''covered'' was entered upon this particular instruction. At any rate since it does not state a correct principle of law, it cannot be said that it was improperly refused. Therefore no error arises.

In regard to the remaining contention, that the court erroneously permitted testimony to go to the jury relative to prior arrests of this defendant, we have reviewed the evidence bearing on this subject and find that the first mention of it was made by Officer Jones under direct examination when, in detailing certain conversations had with the defendant after his arrest, he said, as to one of them, ''about ten or fifteen minutes later I took him around to the fingerprint bureau and got a record card. He said, 'Well, this is a bum break. It is a bad beef.' He said 'This is my thirteenth pinch on a Friday, with a $2 bill in my pocket.' '' No objection was made to the introduction of this testimony, nor was there a motion to strike the answer. On the contrary, under cross-examination information was elicited from this witness to the effect that the card in question was in

fact the record card of the defendant and showed that under three *aliases,* all differing from the name Masters, he had been arrested twelve times, four times upon suspicion of burglary. This conversation having been gone into in such detail upon cross-examination the court permitted the respondent to inquire upon redirect examination as to whether any portion of the conversation in question had been omitted. The proceedings becoming somewhat confused, the learned judge took a hand in the examination, but we are satisfied that his purpose was to clarify the situation as to the particular conversation and the time when it was held, the ruling being that, since inquiry had been made under cross-examination as to the conversation, the jury was entitled to hear it all. (Sec. 1854, Code Civ. Proc.) No objection was made at any time that the inquiries of the court and the district attorney related to matters incompetent, irrelevant or immaterial, but merely that the questions were not proper upon redirect examination. As to this objection the following statement is pertinent: "It frequently happens that evidence which might be inadmissible under strict rules is nevertheless introduced into the case through inadvertence or otherwise, under which circumstances it is held that the adverse party is entitled to introduce evidence on the same matters lest he be prejudiced, the rule being that the party who first introduces evidence which is irrelevant to the issues cannot assign error on the admission of evidence from the adverse party relating to the same matter." (22 Cor. Jur., p. 195, Evidence, sec. 163.)

We fail to find any error in this record which, in our opinion, worked prejudicially to the rights of the defendant.

Judgment and order affirmed.

Houser, Acting P. J., and York, J., concurred.